IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

FILED
IN OPEN COURT

OCT - 1 2019

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:19cr40 |
| | ) | |
| JOSEPH W. POWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the following facts are true and correct, and that

had the matter gone to trial the United States would have proven them beyond a reasonable doubt,

by competent and admissible evidence.

1.      As alleged in Count Ten of the Indictment, on or about May 31, 2016, JOSEPH W.

POWELL, the defendant herein, while onboard Newport News Naval Shipyard, knowingly made

false statements when he logged into Newport News Shipyard's (NNS) Electronic Record System

(ERS) using his NNS employee identification badge and secure password, and entered the weld

record for joint number J0750, and certified the weld joint record as satisfactory, when in fact he

had not inspected this particular weld joint in the manner required or reported.

2.      Newport News Shipbuilding ("NNS"), a division of Huntington Ingalls Industries

("HII"), manufactures submarines and other ships for the United States Navy in the Newport News

Shipyard in the Commonwealth of Virginia, within the Eastern District of Virginia.

3.      To ensure that all of the welds on these vessels are free of defects and otherwise

compliant with U.S. Military Specifications ("MilSPECs"), NNS has a separate and distinct

department, known as Code 038, responsible for inspecting welds.  These inspections are a critical

last step to identify and correct welding issues before vessels are finalized for delivery to the Department of Defense.

4.      Weld joints connect two or more pieces of metal.  Magnetic Particle Testing ("MT"), one of several methods employed by Non-Destructive Test ("NDT") Inspectors in Code 038, is a process for detecting surface and shallow subsurface flaws in weld joints.  Another such method is Eddy Current Test ("ET").

5.      If weld joints are welded improperly, they can fail.   The United States Navy instituted a quality control system, the Submarine Safety Program ("SUBSAFE"), which program was designed to provide maximum reasonable assurance of watertight integrity and recovery capability for submarines.

6.      To track and ensure quality control with inspections, NDT Inspectors in Code 038 certify their MT and ET inspections using NNS's Electronic Record System ("ERS").  The ERS is the electronic system used by NNS that records and captures certain work in progress within the shipyard related to among other things, NDT inspections.  ERS falls within the jurisdiction of the United States Navy and the Department of Defense, both executive branch agencies of the United States.

7.      The electronic certification process on ERS is a standard procedure and it becomes the permanent inspection record of a particular weld joint.  Additionally, after performing an MT inspection, in accordance with NNS policy Q-1060.5, inspectors are required to notate on approved welds, "MT OK," their personnel number (PERN), name, and the date of the inspection on the weld joint itself.

8.      In or about November 2012, JOSEPH W. POWELL, the defendant herein, was hired by NNS to be an NDT Inspector in Code 038, in Newport News, Virginia.  While employed

2

by NNS, the defendant's personnel number ("PERN") was N00082133. As an NDT Inspector, the defendant performed MT and ET inspections on vessels such as Virginia Class Submarines and Aircraft Carriers.

9.      The defendant had extensive training on and familiarity with the proper protocol for MT and ET inspections. He received his Level II MT inspection certification in February 2013 and ET certification in 2014. The defendant also coached and helped train new NDT inspectors in Code 038, served on the Continuous Improvement Team for Code 038, and was awarded multiple Model of Excellence Awards for his work on the team.

10.     In or about 2015 and 2016, Code 038 had a vacant foreman position. The defendant was selected to serve as the acting ("make-up") supervisor for Code 038 from in or about May 2015 to August 2015, and from in or about January 2016 to April 2016. The defendant was also a candidate to fill the vacant foreman position in Code 038.

11.     In or about June 1, 2016, NNS received information that the defendant appeared to have certified the MT inspection of a weld joint JH008-1, Hull 792, in ERS without conducting the requisite inspection protocol.   As a result of this information, NNS initiated an inquiry/inspection.

12.     When questioned on June 1, 2016, POWELL told NNS Examiners, among other things, that he had used the prod machine, that C.S., the make-up supervisor at the time, helped him conduct the inspection since two people were needed to use the prod machine on this particular job. POWELL stated that he just did not mark the weld joint as required by procedure and that it was an oversight. POWELL went on to say that there was no MT powder present on or around the weld joint because he cleaned up all the powder with a rag and there were no prod marks present because he wiped down the weld joint.

3

13. On June 1, 2016, the Examiner then questioned C.S., who denied assisting POWELL with the inspection. POWELL subsequently admitted that he had not inspected the joint as indicated.

14. Various welds certified by the defendant in ERS subsequently were investigated by NNS in June 2016, which led to the identification of additional welds that were not in acceptable condition for inspection, did not contain the required physical markings indicating an inspection had been completed, nor had residue or powder on or around the job from the inspection equipment.

15. On June 3, 2016, NNS Examiners went to investigate 4 additional weld joints that had been approved in ERS by POWELL on June 1, 2016. Examiners found 3 of weld joints covered with grease from previous machining, making MT inspection impossible and 1 of the 3 weld joints had staging blocking 1/3 of the job from being accessible for inspection. When questioned about the issues with the three joints, POWELL stated he had used water to remove the grease and the staging was not there when he inspected the job just days prior. An NNS Examiner asked a welder working in the immediate location of the three weld joints how long the staging had been there and the welder stated that the staging had been in place for 3 weeks.

16. Based on the findings of NNS's initial investigation in June 2016, NNS undertook an extensive re-inspection process of weld joints previously certified by the defendant in ERS in order to determine a "bounding period." That is, NNS investigated how far back to go in its re-inspection efforts in order to ensure no adverse impact remained on vessels delivered to the Department of Defense. NNS inspection personnel and management determined the "bounding period" to be from December 10, 2015 to June 1, 2016, on a total of eight submarines and one



Aircraft Carrier – all of which were under manufacture or repair by NNS for the United States Navy and Department of Defense.

17.     Numerous NDT weld joints certified by the defendant in ERS were re-inspected. The re-inspections revealed that a number of weld joints previously certified by the defendant as being satisfactory were, in the opinion of the personnel who did the re-inspections, in fact, unsatisfactory, as these weld joints contained indications or defects subject to rejection, and specifically required repair by a welder.

18.     The parties agree for sentencing purposes that the estimated loss to the United States attributable to POWELL's false certifications of MT weld inspections from in or about December 2015 through June 2016 is approximately $43,500.

19.     The defendant further stipulates and agrees that his participation in the events described was undertaken knowingly, intentionally, and unlawfully and not as a result of an accident, mistake or other innocent reason.  The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully Submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:   _____
        Brian J. Samuels
        Assistant United States Attorney

After consulting with my attorney, I hereby stipulate that the above Statement of Facts are true and accurate, and that had the matter proceeded to trial, the United States could prove these facts beyond a reasonable doubt.

JOSEPH W. POWELL
Defendant

I am counsel for JOSEPH W. POWELL.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Lawrence H. Woodward, Jr., Esq.
Counsel for the Defendant